## MOSES v. MILLER.

No. 33437.   Jan. 24, 1950.

Rehearing Denied April 11, 1950.

*216 P. 2d 979.*

H. L. Smith, of Tulsa, for plaintiff in error.

G. C. Spillers and G. C. Spillers, Jr., both of Tulsa, for defendant in error.

JOHNSON, J. This is an action filed on the 23rd day of June, 1943, by Edith Moses, plaintiff, against Dr. George H. Miller, a practicing physician and surgeon in the city of Tulsa, Oklahoma, for damages.

The plaintiff alleged, in substance, that in the months of February and March, 1938, she was suffering from serious gall bladder trouble; that she consulted the defendant; that defendant advised her that her gall bladder must be removed; that she was operated by the defendant on March 29, 1938; that

defendant, well knowing that plaintiff's gall bladder should be removed, failed to remove said gall bladder; that after the operation defendant repeatedly, falsely and fraudulently stated to her that he had removed her gall bladder and her appendix; that defendant when he made such statement well knew same to be false; that she did not know that it was false; that defendant made said statement for the purpose of deceiving her into believing that said statement was true; that she did have confidence in him, and did believe that his statement was true; that not until the fall of 1941 did she discover that she had been deceived by the defendant when she was informed by other physicians that she had gall bladder trouble and gall stones; that it would be necessary for her to have an operation; that said physicians did operate, and then informed her that her gall bladder had never been removed; that immediately after the operation by defendant she experienced severe pain in the region of her liver; that she communicated with the defendant relative to same; that he assured her that her trouble was not her gall bladder and appendix bothering her as he had removed both her gall bladder and appendix; that in reply to her complaint he repeatedly told her that her gall bladder was removed; that by reason thereof she suffered actual damages in the sum of $20,000 for loss of earning capacity and pain and suffering, and $10,000 for punitive damages. To this petition a demurrer was filed, asserting failure to state a cause of action, and that the petition shows on its face that the cause of action is barred by the statute of limitations at the time of the commencement of the action. The demurrer was overruled, and in answering defendant filed a general denial, but admitted that he was employed to operate on plaintiff's gall bladder, and that he did remove both the gall bladder and appendix.

Upon the issues thus joined, a jury was impaneled to try the cause. Plaintiff introduced evidence in support of her allegations and rested. Thereupon, the defendant demurred to plaintiff's evidence asserting: that plaintiff's facts did not constitute a cause of action against defendant; that the evidence wholly fails to establish fraud on the part of defendant; that there was no damage established by the plaintiff; that any cause of action is barred by the statute of limitations; that there was no evidence to establish exemplary damages. Thereupon, the court sustained the demurrer, withdrew the case from the jury and dismissed the action at cost of plaintiff. Exceptions were made and allowed, and a motion for a new trial was filed and overruled. It is upon this record that plaintiff seeks a reversal of the trial court.

The principal error relied upon relates to the insufficiency of the evidence of plaintiff to sustain a cause of action, and that the action is barred by the statute of limitations.

For the purpose of this determination, the evidence on the part of the plaintiff will be given the most favorable construction it will bear, and, so considered, it established the following facts: that in February and March, 1938, plaintiff was suffering from gall bladder trouble and consulted the defendant as a physician and surgeon with reference to curing or treating her; that defendant then advised her that she should submit to an operation for the removal of her gall bladder; that he would remove the same on the 29th day of March, 1938; that said defendant on said date performed an operation on her and afterwards informed her that he had removed her appendix and gall bladder; that shortly after this operation she complained to defendant that she still suffered with pain in her side; that defendant advised her that it was not her gall bladder hurting her, but her tonsils, whereupon defendant removed her tonsils; that thereafter she complained to the defendant that her side was still hurting her. In answer by letter on June 22, 1938, defendant said:

". . . I have your letter of to-day, and can assure you that you have nothing serious inside your abdomen. Your Gall Bladder has been removed and your Appendix has been removed. What pain you have must be in the wall and is probably due to neuralgia of the inter-costal nerve. One of the nerves between the ribs on that side. . . ."

Three other letters to the same effect were written to plaintiff by defendant, to wit: on July 5, July 25, and August 19, 1938, all affirmatively asserting the removal of her gall bladder and appendix. In the last mentioned letter defendant said: "Your gall bladder has been totally removed."

Plaintiff testified, in substance, that she had confidence in the defendant; that she relied on his statements, assurances and representations; that even though she continued to suffer the same as before the operation performed on her by the defendant, she believed that the defendant had removed her gall bladder, until in November, 1941, when the physicians, Dr. Marcus H. Rabwin, assisted by Drs. Alex Schulman and Carson, operated and removed her gall bladder; that after this operation she became well and her pain and suffering ceased; that from the time of the operation by defendant she was never free from pain and suffering and was unable to work in comfort; that she never worked more than half time when she did work; that if she had been able to work she could have had full time employment, and but for this gall stone trouble she would have been able to work; that if she had been able to work she could have earned $25 per week at the Robert Dale Company.

Briefly, Dr. Rabwin testified that he was a medical doctor, having graduated from the University of Minnesota Medical School; that he was house surgeon at Los Angeles County General Hospital four years; that he did post graduate work in Vienna at the University of Vienna; and engaged in the practice of surgery since 1930; that he was senior surgeon at the Cedars of Lebanon Hospital, Los Angeles, California; that he was assisted in the operation on plaintiff by Drs. Schulman and Carson; that when he operated he found a diseased gall bladder containing some stones; stones were in the common duct; the common duct was opened and the stones removed; a tube was inserted into the common duct for the purpose of draining the bile to the outside, and the gall bladder was dissected out and removed; that the gall bladder was embedded in a lot of adhesions. It was in its normal location as far as the anatomical relationships are concerned. It was buried in adhesions and was found after freeing these adhesions. The omentum, the duodenum and stomach had to be dissected free in order to expose the gall bladder; that this was the usual thing in people who had previous operations in that region, and in people who have had a history of long standing gall bladder disease; that the gall bladder was somewhat larger than a normal gall bladder free from disease; that the gall bladder showed evidence of long standing chronic inflammation. The wall was thickened. It showed the evidence of chronic inflammatory disease of the gall bladder and wall; that as far as he could say it was an intact, chronic diseased gall bladder; that due to the long standing diseased condition of the gall bladder that it could have and probably did cause the symptoms complained of by the plaintiff; that in his opinion the suffering was caused from the stone in the common duct; that he had no way of telling when the stone in the common duct formed; that he took two stones out of the gall bladder; that the pain and suffering could be severe and intermittent.

Dr. Schulman, who assisted Dr. Rabwin in the operation, testified that he was a doctor of medicine, a graduate of the University of Toronto, Toronto, Canada, licensed in the State of California, and connected with the Cedars of Lebanon Hospital, Los Angeles; that in private practice and in the army

he specialized in surgery; that he was first assistant to Dr. Rabwin when he performed the operation removing the gall bladder of Edith Moses; that his testimony was essentially the same as Dr. Rabwin's; that he saw the gall bladder, and from its appearance it had been diseased for a period of four or five years; that the gall bladder was removed in one piece; that in his opinion it was an intact gall bladder; that there was nothing to suggest that any part of the gall bladder had been removed; that he never knew of a case where a gall bladder once removed reformed or grew back; that the one removed had been there probably all her life; that there was a stone in the common duct, and two in the gall bladder about the same size; that the presence of stones in the gall bladder ordinarily causes pain; that from his observation of the condition of the gall bladder and her history of suffering that independently of the symptoms caused by the stone in the common duct the diseased condition of the gall bladder would cause the pain and suffering complained of by the plaintiff.

Dr. W. A. Delzell, doctor of medicine, graduate of the St. Louis University in 1912, member of the county, state and American Medical Association and fellow of the American College of Surgeons, testified that he had known Edith Moses for ten or fifteen years; that he examined her and had X-rays made of her in 1936 or 1937; that she was suffering from gall bladder trouble, and that he advised surgery to remove the cause of her affliction; that in his opinion her pain and suffering could have been relieved by an operation on the gall bladder; that this condition unless relieved would make her nervous; that if a gall bladder was removed it would not reform or grow back.

Dr. D. L. Garrett, a physician and surgeon since 1910, member Tulsa County Medical Association, state and American Medical Association, American College of Surgery and Licentiate of the American Board of Surgery, formerly chief of staff of St. John's Hospital, Tulsa, Oklahoma, testified that he had considerable experience in surgery and medicine with respect to gall bladders; that in his opinion, from his experience a gall bladder when removed would not reform, regenerate or grow back; that a chronically diseased gall bladder of long standing may and sometimes causes pain and may cause severe pain and suffering.

Dr. F. E. Rushing of Tulsa, whose qualifications were admitted, testified that in his opinion a gall bladder when removed will not regenerate.

Dr. Robert E. Lee Rhodes of Tulsa, whose qualifications were also admitted and who had been practicing since 1912, testified that in his opinion a gall bladder when removed will not grow back; that a chronically diseased gall bladder in which gall stones form and as a result of such diseased condition gall stones are passed from time to time, will cause such a person to suffer pain.

From the evidence in the record, as far as it relates to the question of negligence charged, there is no doubt but that disputed questions of fact were presented for the consideration of the jury, and unless the cause of action was barred by the statute of limitations, it was error to sustain a demurrer to plaintiff's evidence. Under our statute, 12 O.S.A. §95, subdivision three (3), the action must be brought within two years after the accrual of the cause of action, which in this case was the date of the operation by defendant (March 29, 1938). However, if there was a fraudulent concealment of the cause of action by the defendant, under the decisions of this court it would constitute an implied exception to the statute of limitations giving plaintiff two years in which to bring suit after discovery of the fraudulent concealment of her action. Waugh v. Guthrie Gas, Light, Fuel & Improvement Co., 37 Okla. 239, 131 P. 174, L. R. A. 1917 B, 1253; Liberty National Bank of Weatherford v. Lewis, 172 Okla. 103,

44 P. 2d 127; Hurt v. Garrison et al., 192 Okla. 66, 133 P. 2d 547.

It is contended that there is no evidence tending to show fraud on the part of the defendant in concealing the cause of action. In considering the question of whether plaintiff can get into court to try this case, we are to determine whether by her laches she has lost her right of action, or whether by the conduct of defendant it was fraudulently concealed from her. In determining both of these contentions, the relations of the parties, and the acts, statements, and representations of defendant to the plaintiff must be critically examined.

The brief resume of the facts in this case shows the relation of physician and patient, which, of itself, begets confidence and reliance on the part of the patient. Plaintiff was a layman untrained in the diagnosis of gall bladder trouble or gall stone colic and relied upon him and believed that he told her the truth. She maintained her trust in him until November, 1941, when she was first informed by other physicians and surgeons that her gall bladder had not been removed.

Under the circumstances of this case, whether there was evidence tending to show a fraudulent concealment by defendant of the cause of action, or that plaintiff used due diligence to discover her condition, or as to whether the action was barred by the statute of limitations, were all questions, or issues, dependent upon the facts constituting one of fact to be submitted to the jury. 41 Am. Jur. 247, sec. 132; Schmit v. Esser, 183 Minn. 354, 236 N. W. 622, 74 A. L. R. 1312; Waugh v. Guthrie Light, Fuel & Improvement Co., supra; Groendal v. Westrate, 171 Mich. 92, 137 N. W. 87; Anno. 74 A.L.R. 1320.

In this case, if the testimony of plaintiff and that of her witnesses is true, and it must be so taken in this discussion as defendant in presenting a demurrer to plaintiff's evidence admits truth of all evidence introduced and all facts which it tended to establish, as well as every fair and reasonable inference to be drawn therefrom, Oklahoma City v. Dobbs, 193 Okla. 183, 142 P. 2d 369, the conclusion cannot be avoided upon this record that there was evidence to go to the jury tending to show that defendant fraudulently and purposely concealed from her the nature of the operation he performed upon her which she was entitled to know, and made untruthful statements as to her condition. In this case it was not a mere silence on the part of defendant which was relied upon. Defendant repeatedly told plaintiff that her gall bladder was removed, then, to appear more emphatic, asserted that her trouble was not from her gall bladder, that it had been "totally removed," and that she would have to look somewhere else for her trouble. We are not determining the weight to be given to this evidence; that is a matter for the consideration of a jury. We hold that there was evidence in the case to be submitted to the jury, and the court erred in holding otherwise.

The judgment is reversed and a new trial granted.

DAVISON, C.J., and WELCH, CORN, and O'NEAL, JJ., concur. ARNOLD, V.C.J., and GIBSON and LUTTRELL, JJ., concur in result.